UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Carlos Antonio Cardona Lopez

     v.

Richard Luna et al

Civil No. 26-cv-440-LM-AJ
Opinion No. 2026 DNH 086 P

**O R D E R**

Petitioner Carlos Antonia Cardona Lopez seeks a writ of habeas corpus under 28 U.S.C. § 2241 ordering his immediate release from detention in connection with his "withholding-only" proceedings. Cardona Lopez claims that the Department of Homeland Security, Immigration and Customs Enforcement (ICE) failed to provide him with notice of the grounds for revoking his order of supervision or an opportunity to be heard regarding those grounds, which Cardona Lopez asserts violated ICE's own regulations and his due process rights. Respondents object. Doc. no. 5. For the following reasons, Cardona Lopez's petition (doc. no. 1) is denied.

**STANDARD OF REVIEW**

This court may grant a writ of habeas corpus to a person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The petition may be resolved without an evidentiary hearing when the material facts are not in dispute. Cummings v. Fed. Corr. Inst., Berlin, Civ. No. 22-cv-468-SM-AJ, 2024 WL 1256068, at *1 (D.N.H. Mar. 25, 2024). The petitioner has the burden of proving that his confinement is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009).

## BACKGROUND[1]

Cardona Lopez, a Guatemalan national, was previously removed from the United States in June 2011 pursuant to a final order of removal. He unlawfully reentered the United States on December 7, 2016, whereupon he encountered immigration officials. ICE reinstated Cardona Lopez's final order of removal but released him on an order of supervision due to a lack of space to detain him. The order of supervision (which Cardona Lopez signed and which was read to him in Spanish) expressly requires that he not commit any crimes while on release. It also states that any violation of his release conditions may result in a return to detention.

Following his release from ICE custody, Cardona Lopez began living in Rhode Island and reporting regularly at his required ICE check-ins. However, in July 2022, Cardona Lopez pled nolo contendere in Rhode Island state court to a driving under the influence (DUI) charge alleging that his blood alcohol content was 0.15 or greater at the time of the offense.[2] As a result, Cardona Lopez was adjudged guilty

---

[1] The following undisputed facts are drawn from the parties' pleadings and the attachments thereto. See doc. nos. 1, 5, 6.

[2] Cardona Lopez, who is represented by counsel, failed to disclose his DUI conviction in his § 2241 petition. Cardona Lopez asserted in his petition that he "had been nearing a decade of fastidious compliance with every facet of his" release conditions at the time of his arrest by ICE. Doc. no. 1 at 11. Based on the pleadings before the court, it appears counsel may have filed the petition on behalf of Cardona Lopez with incomplete information regarding his client's history or the circumstances of the revocation of his client's release. The court understands that the urgency presented by a client's incarceration may necessitate expeditious action on counsel's behalf. Nevertheless, the court is troubled by counsel's failure to acknowledge the

of that offense and sentenced to a loss of license, fine, community service, and driving classes. See Cote v. State, 994 A.2d 59, 63 (R.I. 2010) ("In Rhode Island, a plea of nolo contendere is treated as a guilty plea.").

Following his conviction, Cardona Lopez continued to appear for check-ins as required. ICE detained him on April 23, 2026 when he appeared for a check-in.[3] ICE issued Cardona Lopez a Notice of Revocation of Release that same day, which explained that Cardona Lopez's release had been revoked pursuant to 8 C.F.R. § 241.4(l) on the basis of his DUI conviction. The Notice lists the court and docket number for Cardona Lopez's criminal case, as well as the date of his conviction. The Notice also stated that Cardona Lopez would be provided an informal interview at which he would be given an opportunity to respond to ICE's reasons for revoking his release and to submit any evidence or information he would like. ICE provided him with an interview on April 23, but Cardona Lopez declined to speak.

Several years before his April 2026 arrest, Cardona Lopez had requested a reasonable fear interview with an immigration officer. That interview took place on May 7, 2026. After the officer found that Cardona Lopez had not established a reasonable fear of persecution if returned to Guatemala, Cardona Lopez appealed to an immigration judge (IJ). On May 15, 2026, an IJ concluded that Cardona Lopez had, in fact, shown a reasonable fear of persecution on a protected ground or torture

---

(assuredly unintentional) misstatement regarding Cardona Lopez's criminal history in his reply to the government's response. See doc. no. 6; see also N.H. R. Prof. Conduct 3.3(a)(1).

[3] It is unclear when ICE became aware of Cardona Lopez's DUI conviction.

if returned to Guatemala. The IJ therefore vacated the immigration officer's

contrary finding and placed Cardona Lopez in "withholding-only" proceedings.[4]

## DISCUSSION

Cardona Lopez subsequently filed this habeas petition. His petition asserts

two counts. In Count I, Cardona Lopez claims that his detention is unlawful

because ICE failed to comply with its own regulations in revoking his release. In

Count II, Cardona Lopez claims that his detention violates his due process rights.

The court will consider each claim in turn.

I.      Cardona Lopez Fails to Show that the Revocation of His Release Violated 8
        C.F.R. § 241.4

The detention of noncitizens subject to final orders of removal—including

reinstated final orders of removal—is governed by 8 U.S.C. § 1231. Johnson v.

Guzman Chavez, 594 U.S. 523, 526 (2021). Section 1231(a) provides that

immigration officials "shall remove" a noncitizen subject to a final order of removal

during a ninety-day statutory "removal period." 8 U.S.C. § 1231(a)(1). Detention is

mandatory during the removal period. Id. § 1231(a)(2)(A). If the noncitizen is not

removed during the removal period, they ordinarily "shall" be released on

---

[4] Withholding of removal is a "country-specific" form of relief: it prevents the government from removing the noncitizen to a particular country but does not prevent removal to other authorized countries. Johnson v. Guzman Chavez, 594 U.S. 523, 536 (2021). Withholding-only relief does not otherwise affect the validity or enforceability of the noncitizen's removal order. Id.; see also 8 U.S.C. § 1231(a)(5) ("If the Attorney General finds that [a noncitizen] has reentered the United States illegally after having been removed . . . , the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed . . . .").

supervision "under regulations prescribed by the Attorney General."[5] Id.
§ 1231(a)(3).

One such regulation is found at 8 C.F.R. § 241.4.[6] Section 241.4 provides that
release granted after the expiration of the removal period may be revoked in certain
circumstances, including when the noncitizen "violates any condition of release" or
the noncitizen's conduct "indicates that release would no longer be appropriate."
8 C.F.R. § 241.4(l)(1), (2). The noncitizen must be "notified of the reasons for
revocation" "[u]pon revocation." Id. § 241.4(l)(1). The noncitizen must also be
provided "an initial informal interview promptly after his or her return to
. . . custody to afford the [noncitizen] an opportunity to respond to the reasons for
revocation stated in the notification." Id. If the noncitizen is not released from
custody after this informal interview, he is entitled to the review process set forth in
other subsections of the regulation for noncitizens who are not released after
expiration of the removal period. Id. § 241.4(l)(3); see also id. §§ 241.4(h), (i), (k).

This court and others have held that any revocation of post-removal-period
release must comply with applicable regulations intended to safeguard noncitizens'
due process rights. E.g., Mejia v. US Immigr. & Customs Enf't & Removal

---

[5] ICE "may" continue to detain a noncitizen beyond the removal period if the
noncitizen (1) has been ordered removed on grounds of inadmissibility, (2) is
removable under specified subsections of § 1227(a), or (3) is a risk to the community
or unlikely to comply with the removal order. 8 U.S.C. § 1231(a)(6).

[6] The government asserts, and Cardona Lopez does not contest, that the
revocation of Cardona Lopez's release was governed by § 241.4. The court assumes
without deciding that § 241.4 is the applicable regulation.

Operations., --- F. Supp. 3d ----, ----, 2026 WL 936066, at *4 (D.N.H. 2026), appeal

filed sub nom., Mejia v. Wesling, No. 26-1755 (1st Cir. June 26, 2026). Section 241.4

requires, "at minimum, that ICE articulate a meaningful, individualized basis for

revocation sufficient to give the noncitizen notice of the grounds for re-detention

and an opportunity to respond." Vo v. Lyons, Civ. No. 25-cv-533-JL-TSM, 2026 WL

323133, at *4 (D.N.H. Jan. 27, 2026) (Laplante, J). No "particular magic words"

need be included in the Notice of Revocation, but ICE "must provide real, specific,

concrete information that a noncitizen could actually respond to." Hashemi v. Noem,

809 F. Supp. 3d 1027, 1035 (C.D. Cal. 2025). "[V]ague" and "generic" statements are

not sufficient. Id. at 1034; see, e.g., Mejia, --- F. Supp. 3d at ----, 2026 WL 936066, at

*5 (notice insufficient because it asserted only that "the purposes of release have

been served" without identifying any factual basis to support this assertion

(quotation and brackets omitted)).

Cardona Lopez claims that his Notice of Revocation failed to meet this

standard. The court disagrees. The Notice states that Cardona Lopez's release was

being revoked because of his DUI conviction. It lists the date of Cardona Lopez's

conviction, the court in which he was convicted, and the docket number of his

criminal case. The justification set forth in the Notice for revocation of Cardona

Lopez's release is neither generic nor vague; it reflects an individualized, concrete

change in Cardona Lopez's circumstances from the time of his release in December

2016. See Ata v. Strafford Cnty. Dep't of Corrs., Superintendent, Civ. No. 26-cv-6-

PB-TSM, 2026 WL 914957, at *3 (D.N.H. Apr. 3, 2026) (Barbadoro, J.) (finding

justification set forth in notice sufficient where, "while brief, [it] convey[ed] the essential basis for [petitioner's] re-detention, teeing up ICE's justification for him to attack to the extent he is able"). What is more, it is undisputed that the Notice was served on Cardona Lopez on the same date of his arrest, and that he was provided an informal interview on that date in order to "respond to the reasons for revocation . . . stated in the" Notice. Doc. no. 5-3 at 1.

For these reasons, the court rejects Cardona Lopez's claim that his release was revoked in violation of ICE's regulations.[7]

II.    Cardona Lopez Fails to Demonstrate That His Detention Violates His Due Process Rights

Cardona Lopez's due process claim primarily relies upon his assertions that the revocation of his release did not comply with ICE's regulations. The court rejects Cardona Lopez's arguments on this score for the reasons discussed above.

The contours of Cardona Lopez's due process claim are otherwise opaque. To the extent Cardona Lopez seeks release on the basis of Zadvydas v. Davis, 533 U.S. 678 (2001), the court is not persuaded. In Zadvydas, the Supreme Court deployed the canon of constitutional avoidance to "read an implicit limitation into" § 1231 and held that the statute "authorizes detention only for 'a period reasonably necessary to bring about . . . removal.'" G.P. v. Garland, 103 F.4th 898, 901 (1st Cir. 2024) (quoting Zadvydas, 533 U.S. at 689). Although detention under § 1231 is

---

[7] Cardona Lopez has not argued that the official who revoked his release lacked authority under § 241.4 to do so. See Mejia, --- F. Supp. 3d at ----, 2026 WL 936066, at *6-7. He has therefore waived this argument, and the court does not consider it.

7

"presumptively reasonable" when it lasts six months or less, if the noncitizen's detention extends beyond six months and "there is no significant likelihood of removal in the reasonably foreseeable future," the government must "release the noncitizen subject to supervision." Id. (quoting Zadvydas, 533 U.S. at 701).

The First Circuit's opinion in G.P. forecloses the possibility that Cardona Lopez might obtain release under Zadvydas.[8] G.P. squarely holds that noncitizens in withholding-only proceedings—like Cardona Lopez—do not face "the type of indefinite and potentially permanent detention at issue in Zadvydas." Id. at 902 (quoting Castaneda v. Perry, 95 F.4th 750, 757 (4th Cir. 2024)). The Zadvydas petitioners were caught in a "removable-but-unremovable limbo": "both had exhausted administrative and judicial remedies to prevent removal and were being detained only because the government was struggling to find a country to take them in." Id. at 901 (quoting Jama v. Immigr. & Customs Enf't, 543 U.S. 335, 347 (2005)). Because of the constitutional concerns that would be triggered by construing § 1231 to permit the petitioners' "potentially permanent" detention, Zadvydas construed the statute as not so permitting. Id. (quoting Zadvydas, 533 U.S. at 691).

Like the petitioner in G.P., Cardona Lopez fails to demonstrate that his detention is potentially permanent. Although Cardona Lopez highlights that his withholding-only proceedings may last a significant length of time,[9] he makes no

---

[8] In addition, Cardona Lopez has been detained for approximately two months. He is not entitled to release under Zadvydas for this reason as well.

[9] The petitioner in G.P. had been detained for approximately four years at the time of the First Circuit's opinion. G.P., 103 F.4th at 900.

8

showing that, at the conclusion of those proceedings, the government will be unable to remove him. "Instead, once [Cardona Lopez's] current withholding-only proceedings end, he will either be removed to [Guatemala] or the government will have to begin the process of finding a different country to accept him." Id. at 902. G.P. therefore forecloses the possibility of outright release under Zadvydas in this case.

To the extent Cardona Lopez's due process claim rests upon Judge Elliott's analysis in Destino v. FCI Berlin, Warden, Civ. No. 25-cv-374-SE-AJ, 2025 WL 4010424 (D.N.H. Dec. 24, 2025), appeal filed sub nom., Destino v. Ackley, No. 26-1181 (1st Cir. Feb. 20, 2026), the court is not persuaded he is entitled to the relief he seeks. In Destino, Judge Elliott held that noncitizens with sufficient ties to the United States may have a constitutional right to a bond hearing at which the government bears the burden of demonstrating sufficient grounds for detention during the pendency of removal proceedings. 2025 WL 4010424, at *9. However, Cardona Lopez seeks immediate release, not a bond hearing. See doc. no. 1 at 12 (asserting that "immediate release is the only viable remedy" for the asserted due process violation); see also id. (prayer for relief requesting immediate release, "as no other adequate remedy exists"). Even if Cardona Lopez could be entitled to any relief under Destino, "the appropriate remedy is not outright release." Tsikhotskyi v. Tatum, Civ. No. 26-cv-249-JL-TSM, 2026 WL 1266023, at *3 (D.N.H. May 8, 2026).

For these reasons, Cardona Lopez's due process claim fails.

## CONCLUSION

Cardona Lopez's petition for a writ of habeas corpus (doc. no. 1) is denied.

The clerk is directed to enter judgment and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 30, 2026

cc:    Counsel of Record

10